IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

USDC-EDPA
REC'D CLERK

| | |
|---|---|
| CASSIDY PYSER<br>3228 Ellington Court<br>Bensalem, PA  19020<br>　　　　Plaintiff,<br>　　　v.<br>KUTZTOWN UNIVERSITY OF<br>PENNSYLVANIA<br>15200 Kutztown Road<br>Kutztown, PA  19530<br>　　　and<br>ARAMARK FOOD AND SUPPORT<br>SERVICE GROUP, INC.<br>2400 Market Street<br>Philadelphia, PA  19103<br>　　　and<br>MELISSA VANDERPOOL,<br>DESIREE REASONER,<br>JESUS PEÑA, and<br>UNIDENTIFIED JOHN DOE<br>CAMPUS SECURITY<br>POLICE OFFICERS, all acting in<br>their individual capacities,<br>c/o Kutztown University of<br>Pennsylvania<br>15200 Kutztown Road<br>Kutztown, PA  19530<br>　　　and<br>PAUL MACK and<br>CHRISTOPHER WALLACE,<br>c/o Aramark Food and Support<br>Service Group, Inc.<br>2400 Market Street<br>Philadelphia, PA  19103<br>　　　　Defendants. | CIVIL ACTION<br><br>NO. 19-5581<br><br>JURY TRIAL DEMANDED |

## AMENDED CIVIL ACTION COMPLAINT

Plaintiff Cassidy Pyser ("Plaintiff" or "Pyser"), by her undersigned attorneys, avers as follows in support of the allegations and causes of action set forth in this Amended Complaint against the named Defendants:

## INTRODUCTORY STATEMENT

1.      Plaintiff brings this action to redress claims arising from the actions and inactions effected by the Defendants individually and in concert to deprive her of her common law and constitutional rights in connection with her attendance as a fully matriculated student for two years at Kutztown University ("Defendant Kutztown" or the "University") located in Kutztown, Pennsylvania.

2.      More specifically, the following paragraphs document that after Defendant Kutztown fraudulently induced Plaintiff to attend and reside at the University by promising a safe educational and residential environment, the Defendants, individually and collectively directly created the danger that allowed Plaintiff to be the victim of outrageous and uncorrected anti-Semitic acts and behaviors that caused her great emotional harm and required her to leave her studies at Kutztown University before the start of her third year. Moreover, Defendant Kutztown and its named individual employees caused the danger and, in turn, the harm that was reasonably foreseeable caused to Plaintiff, who as an individual of the Jewish faith was a reasonably foreseeable victim, acted with culpability that shocks the conscience, and caused the Plaintiff to be more vulnerable to danger that it created on campus.

3.      The Defendants' individual and collective conduct formed a conspiracy that was grossly indifferent to Plaintiff's constitutional and common

2

law rights and has caused her permanent and irreparable psychological harm, making a significant compensatory and punitive damages awards appropriate.

## THE PARTIES

4.      Plaintiff Cassidy Pyser is a resident and citizen of the Commonwealth of Pennsylvania and currently resides at 3228 Ellington Court, Bensalem, PA 19020.

5.      At all times relevant to the present Complaint, Plaintiff (born September 18, 1996) was a fully matriculated student at Kutztown University from September 2015 through May 2017.

6.      Defendant Kutztown is an accredited institution of higher learning associated with of the Pennsylvania State System of Higher Education ("PASSHE"). Defendant Kutztown's principal place of business is located at 15200 Kutztown Road, Kutztown, PA 19530.

7.      As reflected on its public website, the University boasts student enrollment of nearly 9,000 students from across the United States and the world, almost fifty percent (50%) of whom live in residence halls on the University campus.

8.      Kutztown University was founded in 1866 as Keystone Normal School, became Kutztown State Teachers College in 1928 and Keystone State College in 1960. It achieved University status in 1983.

9.      The University publicly professes not to discriminate in educational opportunity on the basis of, *inter alia,* religion.

3

10. While associated with other Universities that are related through PASHHE, Defendant Kutztown is governed by a Counsel of Trustees ("COT") consisting of eleven members who set the educational and operational policies of Defendant Kutztown.

11. On information, knowledge and belief, Defendant Kutztown is largely and independently supported by the tuition payments of its students that, like other institutions of higher learning associated with PASHHE, are determined by the Kutztown COT in accordance with, *inter alia*, its geographical location.

12. On information, knowledge and belief, the COT of Defendant Kutztown has the power to and does solicit monies from alumni and other donor sources to fund its operations and maintains accounts separate and apart from the funds of other PASHHE institutions to hold such funding.

13. On information, knowledge and belief, the debts and obligations of Defendant Kutztown, including contractual and other claims brought against it are binding on that entity and do not constitute claims against the Commonwealth of Pennsylvania without the voluntary agreement of the state to accept such obligations.

14. While at all times applicable to the present Amended Complaint, Defendant Kutztown was acting under the color of law, the Defendant Kutztown and the named individual employees of Defendant Kutztown acting in their individual capacities (Melissa Vanderpool, Desiree Reasoner, Jesus Peña, and the unidentified police officers) are not actors entitled to statutory protections

4

and immunities extended to actual departments and agencies of the
Commonwealth of Pennsylvania.

15.     Defendant Aramark Educational Services LLC ("Aramark")[1] is a
company incorporated and operating under the laws of the Commonwealth of
Pennsylvania with a principal place of business located at 2400 Market Street,
Philadelphia, PA 19103.

16.     At all times applicable to the present matter, Aramark provided food
and dining services to students in the University's several dining halls at a fee
paid by each of the students participating, a function that traditionally is
provided by a governmental actor, thereby rendering Aramark a governmental
actor for all purposes related to the allegations in the present Amended
Complaint.

17.     Defendants Melissa Vanderpool ("Vanderpool") (Assistant Director of
Residence), Desiree Reasoner ("Reasoner") (Director of Residence Life), Jesus
Peña ("Peña") (Deputy to University President Kenneth S. Hankinson for
compliance and equity and legal affairs), and the yet unidentified John Doe
Campus Security Police Officers ("Police Officers") are all residents and citizens
of the Commonwealth of Pennsylvania employed by the Defendant Kutztown
University in the capacities noted above.

---

[1] By Stipulation entered in the Philadelphia Court of Common Pleas before removal, the
proper Aramark defendant is Aramark Educational Services, LLC.  A separate
Stipulation to allow the appropriate amendment to the caption will be shortly filed in
this Court.

18. At all times relevant to the present Complaint, each of them were acting in their individual capacities under the color of law at Kutztown University, 15200 Kutztown Road, Kutztown, PA 19530 and were responsible for the safety of the students attending and living at the University.

19. Defendants Paul Mack ("Mack") (Aramark Resident Director) and Christopher Wallace ("Wallace") (Aramark Director of Operations) are residents and citizens of the Commonwealth of Pennsylvania who, at all times relevant to the present Complaint, worked out of the local office of Aramark located at 15200 Kutztown Road, Kutztown, PA 19530.

20. At all times relevant to the present Complaint, Defendants Mack and Wallace were acting as supervisory and policy-making employees of Aramark serving and employing University students in the University's dining halls.

## VENUE and JURISDICTION

21. Venue and jurisdiction are proper in in this Court because Defendant Kutztown and its individually named employees regularly conduct business within the geographical boundaries of the Eastern District of Pennsylvania (including the recruiting of students to attend the University) and Defendant Aramark maintains its principal place of business therein.

22. This Court has jurisdiction to hear and resolve all of Plaintiff's claims arising from contract and tort actions and actions in accordance with the Pennsylvania Constitution as set forth herein and can hear and resolve all issues relating to Plaintiff's claims arising from the constitutional protections

6

afforded pursuant to the protections of federal constitutional rights brought pursuant to the provisions of 42 U.S.C. §1983 in accordance with the governing terms of 28 U.S.C. §§ 1331 and 1343.

## RELEVANT FACTUAL HISTORY

23.    Plaintiff first matriculated as a freshman student the University in September 2015, intending to seek and secure a four-year college degree.

24.    Her decision in that regard was based upon the representations publicly made by the University that it provided to all students a safe environment to under college studies free from any threats to that well-being made, *inter alia,* on the basis of Jewish religious belief.

25.    Moreover, despite an obligation to do so contractually and pursuant the federal law known as the Clery Act (formally The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics, 20 U.S.C. §1092(f)), Defendant Kutztown purposely and deliberately created a danger to putative students of the Jewish faith by not properly advising or giving timely warnings to incoming Jewish students and their parents in the Annual Campus Security Reports mandated under the Clery Act that could represent a foreseeable threat to the safety those students or include in the mandated Annual Campus Security Reports.

26.    Specifically, despite the fact that it was identified by the Anti-Defamation League as having been targeted with another 17 Universities and colleges by neo-Nazi and other hate groups, the University did not warn that the campus and its immediate environs had been the target of outside white

7

supremacist groups and anti-Semitic postings including the posting of signs throughout the campus area focused on the preservation of white American culture and heralding neo-Nazi propaganda.

27. The University additionally did not publish that it intended to abolish a University policy rule against the display of symbols of hate and permitted by students in their residence hall of symbols of hate against Jews, including the prominent display of Nazi swastikas and other hate-related propaganda.

28. Those actions by the University were intentionally taken to convince students that it provided a safe and secure environment that was free from bigotry based on hatred of Jews and that students following Jewish faith would not be the target of hate-related speech, threats and actions.

29. Those actions were taken solely for the purpose of not curtailing student admissions and resulting additional tuition monies and in the context of the social atmosphere of hatred toward followers of the Jewish faith, constituted actions that shock all decency and morality.

30. In fact, despite its knowledge of hate-induced criminal activity, it affirmatively withheld from the mandated Clery reports for the years preceding Plaintiff's matriculation all the evidence of such hate-filled activity in or about the campus.

31. If Plaintiff had been made aware of the hate-related activity on the University campus and in the surrounding community constituting reportable offences mandated both by the Clery Act as well as Defendant Kutztown's

8

contractual obligations to its students, she would not have accepted admission to the University.

26. As should have been anticipated by the Kutztown Defendants promptly following her admission, Plaintiff began experiencing discrimination on the basis of her Jewish faith, including statements and actions from roommate Erin Dibble's ("Erin") then-boyfriend.

27. Those hateful actions increased and while Erin was still her roommate, Plaintiff received from Erin text messages that were hateful, threatening and anti-Semitic. Copies of those messages are attached as Exhibit "A".

28. Additionally Plaintiff found that Erin had smashed her mezuzah, a Jewish religious symbol usually posted on an entry doorpost that consists of a piece of parchment called a klaf contained in a decorative case and inscribed with specific Hebrew verses from the Torah.

29. Following those incidents, the hate-filled actions of Erin continued forcing Plaintiff to move from the dormitory room she shared with Erin and into the suite occupied by the student Resident Assistant, Allison Seibert ("Seibert") who was senior at the University.

30. Thereafter, through discussions with Plaintiff, Ms. Seibert became aware of the improper actions of Erin and reported that information on several occasions to her direct boss Defendant Vanderpool who in turn discussed the information with Defendant Reasoner.

9

31.    No action was taken by any University employee despite the gravity of the accusations against Erin.

32.    Shortly thereafter, Plaintiff attempted to eat at one of the assigned dining halls, only to be confronted by and refused service by Erin who was employed as a food server by Defendant Aramark.

33.    That incident was reported by Plaintiff and a witness to the events in writing again to Defendants Vanderpool and Reasoner as well as to Aramark employees, Defendants Mack and Wallace.

34.    Again no action was taken to resolve the ongoing discrimination or remove Plaintiff from the apparent dangers created by the defendants collectively.

35.    Plaintiff also reported the clearly illegal discriminatory actions that she was suffering to the unidentified campus police officers and in turn to security head Jesus Peña who collectively also took no action to resolve the serious issues raised by Plaintiff's complaints.

36.    The problems of racism and bigotry against Jews continued to escalate and a campus group called Kutztown Resists organized a march of students, faculty and local residents in response to the ongoing hate-filled Nazi propaganda posted and distributed on the University Campus targeted at Jews.

37.    Thereafter, Plaintiff was forced to seek and receive psychological counseling in order to deal with the emotional distress and fear she was experiencing arising from the continued dangers created by the defendants collectively.

38.    Based upon the complete failure of the Defendants, individually and collectively, to resolve the created danger of being exposed to the aforesaid the hate-filled actions and rhetoric causing the danger of which the Defendants were aware that Plaintiff was a victim, on May 2, 2017 Plaintiff announced and advised in writing she would not be returning to the University for the fall semester because of "anti-Semitism".

39.    Plaintiff's last day at the University was May 27, 2017.

40.    Since that time, and as a direct result of the psychological harm caused by the unlawful actions of the defendants collectively in creating the aforesaid danger, Plaintiff was required to miss the entire next semester of schooling.

41.    Thereafter, Plaintiff matriculated as a full time student at another university where she has experienced great success in her studies and is scheduled to graduate with honors in the very near future.

42.    Nevertheless, the actions of Defendants as aforesaid have caused Plaintiff to sustain harm, including economic damages, deprivation of the benefit of her bargains, and losses in tuition, as well as great emotional distress, humiliation and embarrassment.

43.    The actions of the individual defendant were egregious, were affected willfully, maliciously, and with wanton disregard for Plaintiff's rights and were in all respects outrageous, thereby permitting compensation for an award of punitive damages against the appropriate individuals as cited hereinafter.

11

## COUNT I
## BREACH OF CONTRACT
### [Against Defendant Kutztown University]

44.     Plaintiff incorporates by reference paragraphs set forth hereinabove as if fully set forth in herein.

45.     The actions of the University in not providing the implied promise of a safe environment to Plaintiff constitute an actionable breach of contract.

44.     As a direct result of that breach, Plaintiff was caused to pay to the University monies for tuition, room and board, and fees of approximately $30,000.00 which properly must be returned to her.

45.     Additionally, Plaintiff has been caused to lose a full semester of earnings and to expend additional sums in connection with her continuing educational pursuits that would not have been necessary if she had been able to continue her education at Kutztown.

## COUNT II
## FRAUD IN THE INDUCEMENT
### [Against Defendant Kutztown University]

46.     Plaintiff incorporates by reference paragraphs set forth hereinabove as if fully set forth in herein.

47.     Plaintiff was fraudulently induced to matriculate as a student at Kutztown University by the University's false assurance that she would be provided with an appropriate environment free of hate and bigotry to complete her studies.

49.     Instead, Plaintiff was forced to leave the University based upon the

12

oppressive presence of anti-Semitic actions and propaganda.

50.     As a direct result Plaintiff has sustained harm, including economic damages, deprivation of the benefits of her bargains, loses in future earnings and losses in tuition, as well as great emotional distress, humiliation and embarrassment.

## COUNT III
## VIOLATIONS OF THE PENNSYLVANIA CONSTITUTION
### [Against Kutztown University]

52.     Plaintiff incorporates by reference paragraphs set forth hereinabove as if fully set forth in herein.

53.     The actions of the University constitute a denial of due process and equal protection guaranteed by the Constitutions of the United States and the Commonwealth of Pennsylvania.

54.     As a direct result Plaintiff has sustained harm, including economic damages, deprivation of the benefit of her bargains, losses of future earnings and losses in tuition, as well as great emotional distress, humiliation and embarrassment.

## COUNT IV
## TORTIOUS INTERFERENCE WITH PLAINTIFF'S IMPLIED CONTRACT WITH
## DEFENDANT KUTZTOWN UNIVERSITY
### [Against Aramark and all Individual Defendants]

54.     Plaintiff incorporates by reference paragraphs set forth hereinabove as if fully set forth in herein.

13

55.     The actions of the Defendants named in this Count were intended to interfere with Plaintiff's contract with the University to attend as student for a full four years and gain an appropriate education.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## [Against All Defendants]

56.     Plaintiff incorporates by reference paragraphs set forth hereinabove as if fully set forth in herein.

57.     Defendants' conduct was all extreme and outrageous and shocks the moral conscience.

58      Defendants engaged in this outrageous conduct with the intent of causing emotional distress to Plaintiff, or in reckless disregard of the probability of causing emotional distress to Plaintiff.

59.     As a direct result of Defendants' conduct, Plaintiff has suffered and will continue to suffer severe damages, including past and future loss of compensation, physical injuries, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

60.     Defendants' conduct was willful, wanton, outrageous and done with a reckless disregard of the rights of Plaintiff and warrants an award of punitive damages against Aramark and the individual defendants.

## COUNT VI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## [Against All Defendants]

61.     Plaintiff incorporates by reference paragraphs set forth hereinabove

14

as if fully set forth in herein.

62.   Defendants engaged in this conduct negligently causing emotional distress to Plaintiff in reckless disregard of the probability of causing emotional distress to Plaintiff.

63.   As a direct result of Defendants' conduct, Plaintiff has suffered and will continue to suffer severe damages, including past and future loss of compensation, physical injuries, extreme mental anguish, severe anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

64.   The actions of Aramark and the individual Defendants were willful, wanton, outrageous and done with a reckless disregard of the rights of Plaintiff and warrant an award of punitive damages.

## COUNT VII
## PROMISSORY ESTOPPEL
### [Against Defendant Kutztown University]

65.   Plaintiff incorporates by reference paragraphs set forth hereinabove as if fully set forth in herein.

66.   In Pennsylvania, a claim for promissory estoppel requires three elements: (1) "the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee"; (2) the promisee took action or refrained from action in reliance on the promise; and (3) enforcing the promise is the only way to avoid injustice.

67.   As described more fully above, Defendant Kutztown University, for its own benefit and on its own behalf made implied promises and assurances to

15

Plaintiff that she would be provided a safe and unbiased environment while attending and living on the premises of its campus.

68.   Plaintiff reasonably relied upon these representations and assurances, to her emotional and economic detriment.

69.   In accordance with the principles of Pennsylvania law, enforcing Defendants' promises and paying Plaintiff what she is owed is the only way to prevent an injustice to her.

**COUNT VIII**
**CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS, 42 U.S.C. §1983**
**[Against Aramark and all individual Defendants]**

70.   Plaintiff incorporates by reference paragraphs set forth hereinabove as if fully set forth in herein.

71.   The actions taken by the Defendants named in the Count were the result of and taken in furtherance of a conspiracy to violate Plaintiff's rights under the United States Constitution to be free of actions taken against her because of religious expression.

WHEREFORE. Plaintiff demands judgment against the several defendants named herein, jointly and severally as permitted under the several counts set forth above, including compensatory, consequential and punitive damages (where the latter is appropriate), attorneys' fees and the costs of litigation.

**SPECTOR GADON ROSEN VINCI P.C.**

By: /s/ *Alan B. Epstein*
      Alan B. Epstein, Esquire
      Johan Ashrafzadeh-Kian, Esquire
      Pa. Atty. I.D. Nos. 2346/314994
      1635 Market Street Seventh Floor
      Philadelphia, PA  19103
      (215) 241-8888
      *aepstein@sgrvlaw.com*
      *jkian@sgrvlaw.com*

      *Attorneys for Plaintiff,*
      *Cassidy Pyser*

# Exhibit "A"



JUL 24, 2016 AT 5:16 PM





JUL 24, 2016 AT 5:26 PM

Pyser v. Kutztown 000040

## ripstick

  

AUG 20 AT 5:55 PM

## How to pick up Jewish chicks





AUG 22 AT 9:06 AM

Erin

AUG 22 AT 12:40 PM



## Moving in on Wednesday

Ok 

# ripstick

  

How to protect your watermelon farm





Erin this racist shit needs to stop



???

The Jewish joke you sent me the other day really upset me

Pyser v. Kutztown 000042

## CERTIFICATE OF SERVICE

I, Alan B. Epstein, Esquire certify that the forgoing Civil Action Complaint has been filed and sent to all registered Counsel for Kutztown University and Aramark Educational Services, LLC. I further certify that a copy of the foregoing Amended Complaint will be served on all other Defendants who are not yet represented but have been served with the original Complaint filed in the Philadelphia Court of Common Pleas and on counsel for their Aramark Educational Services, LLC employer pursuant to the applicable Rules of Civil Procedure.

/s/ *Alan B. Epstein*

Alan B. Epstein, Esquire